**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MALIK R. SMITH, | : |
| | : |
| Petitioner, | :      Civ. No. 18-11952 (RBK) |
| | : |
| v. | :      **OPINION** |
| | : |
| PATRICK NOGAN, | : |
| | : |
| Respondent. | : |
| | : |

KUGLER, United States District Judge:

Petitioner is a state prisoner and is proceeding *pro se* with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.)  Respondent filed an Answer opposing relief, (ECF No. 7), and Petitioner did not file a reply.  For the following reasons, the Court will dismiss Ground Seven as procedurally defaulted, alternatively deny Ground Seven on the merits,  deny the remainder of the Petition, and will not issue a certificate of appealability.

## I.   BACKGROUND

In Petitioner's direct appeal, the Appellate Division adopted the following summary of the facts:

> Defendant, Malik R. Smith, appeals from his May 17, 2006 conviction following a trial by jury on charges of first-degree robbery, *N.J.S.A.* 2C:151 (counts two and three); first-degree felony murder, *N.J.S.A.* 2C:113(a)(3) (count four); first-degree aggravated manslaughter, *N.J.S.A.* 2C:114(a) (count five); second-degree possession of a weapon for an unlawful purpose, *N.J.S.A.* 2C:394(a) (count six); third-degree unlawful possession of a handgun, *N.J.S.A.* 2C:395(b) (count seven); and fourth-degree tampering with evidence, *N.J.S.A.* 2C:286(1) (count eight).
>
> The record reveals that in the early morning hours of December 24, 2002, while Craig Packman, the bartender of the Maritime Tavern in Atlantic City, was speaking with a friend toward the rear of the building, two masked men burst into the bar. One of the two, later

identified as defendant, pulled a gun from his pocket and waved it in the air while announcing, "this is a f——ing holdup. Put your f——ing money on the bar." Packman, armed with his own handgun, drew it. Seeing Packman's gun, defendant fired one or two shots at Packman who was able to return fire before collapsing. Packman died shortly thereafter. One of the shots fired by Packman struck defendant's accomplice, Gary Sayers, who died a few hours later. Trial testimony established that co-defendant Heleena Hendricks had entered the bar before defendant and Moore to find out how many people were inside.

Approximately seven hours after Packman's murder, police knocked on the apartment door of Ivy Moore, defendant's girlfriend. She awoke defendant, who told her not to open the door. After first trying to hide his gun inside a television, defendant disassembled the weapon, putting one part into a tub of butter in Moore's refrigerator and a second part into a box of hamburgers in the freezer. Defendant and Moore managed to slip away from police by sliding through an opening in a closet floor that led to "open passageways" located beneath several adjacent houses. Prior to trial, Moore entered a negotiated plea of guilty to second-degree conspiracy to commit robbery in which she agreed to testify on behalf of the State at trial.

Following defendant's conviction, and after all appropriate mergers, defendant was sentenced to a sixty-year term of imprisonment on count four, subject to the eighty-five percent parole ineligibility term required by *N.J.S.A.* 2C:437.2. On counts seven and eight, the judge imposed, respectively, consecutive terms of five years and eighteen-months of imprisonment, consecutive to the sentence on count four. The aggregate sentence was sixty-six and one-half years of imprisonment. Appropriate fines and penalties were imposed.

*State v. Smith*, No. A-1539-06T4, 2009 WL 47392, at *1 (N.J. Super. Ct. App. Div. Jan. 9, 2009) (footnote omitted).   Ultimately, the Appellate Division affirmed in January of 2009. *Id*. at *6. Petitioner filed a petition for certification, and the Supreme Court of New Jersey denied certification in April of 2011. *State v. Smith*, 16 A.3d 385 (N.J. 2011).

Thereafter, Petitioner filed a post-conviction relief ("PCR") petition, and the PCR court denied the petition in March of 2012.  *State v. Smith*, No. A-4371-11T2, 2014 WL 2765712, at *1 (N.J. Super. Ct. App. Div. June 19, 2014).  Petitioner appealed, and the Appellate Division reversed

and remanded in June of 2014, because "PCR counsel ignored defendant's arguments contained in his *pro se* PCR brief" and did not provide the PCR court with a complete trial transcript. *Id.*

In May of 2015, on remand, the PCR court denied the PCR petition. (ECF No. 7-51.)  In November of 2017, the Appellate Division affirmed on PCR appeal, *State v. Smith*, No. A-5001-14T4, 2017 WL 5494622, at *1 (N.J. Super. Ct. App. Div. Nov. 16, 2017), and the New Jersey Supreme Court denied certification in June of 2018. *State v. Smith*, 186 A.3d 901 (N.J. 2018).

Petitioner filed the instant Petition in July of 2018, (ECF No. 1), and Respondent filed an Answer opposing relief, (ECF No. 7).  Petitioner did not file a reply.

Petitioner raises the following claims:

> 1.      The trial judge failed to take into consideration the real time consequences of the No Early Release Act. (ECF No. 1-1, at 1.)
>
> 2.      This matter should be remanded for reconsideration and resentencing because the trial judge assumed aggravating factors that were not supported by the record. (*Id*. at 2.)
>
> 3.      The trial court rushed the jury to render a verdict and the possibility of weekend deliberations was coercive therefore defendant should be granted a new trial. (*Id*. at 5.)
>
> 4.      Trial counsel was ineffective because he failed to move for a mistrial after the jury indicated that it was "hopelessly deadlocked." (*Id*. at 8.)
>
> 5.      Trial Counsel was ineffective by failing to move for dismissal of Counts II and III of the indictment.[1] (*Id*. at 9.)
>
>> A.      The State's witness testimony tainted the grand jury's decision to indict. (*Id*.)
>>
>> B.      The State[] failed to demonstrate that Petitioner committed or attempted to commit robbery. (*Id*. at 11.)

---

[1] Under Ground 5, Petitioner is in reality arguing that counsel should have moved for two different types of dismissal.  Under Ground 5A, Petitioner seems to argue that counsel should have moved to dismiss the entire indictment, and under Ground 5B, Petitioner appears to argue that counsel should have moved for a judgment of acquittal as to Counts II and III, specifically.

6.     Petitioner was denied a fair trial due to the failure of two jurors to disclose during *voir dire* their pre-trial knowledge of the [Petitioner] and the crime. (*Id*. at 13.)

7.     Petitioner was denied his right to a fair and impartial [trial], when the trial court had *ex parte* post-conviction communication with the jury. (*Id*. at 15.)

8.     Petitioner was denied the right to effective assistance of appellate counsel due to counsel's substandard performance. U.S. Const. Amends. VI & XIV; N.J. Const. Art. 1, Par. 10. (*Id*. at 16.)

## II.     STANDARD OF REVIEW

Section 2254(a) permits a court to entertain claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioners have the burden of establishing each claim in the petition. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013).  Under § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal courts in habeas cases must give considerable deference to the determinations of state trial and appellate courts.  *See Renico v. Lett*, 599 U.S. 766, 772 (2010).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Moreover, AEDPA deference applies even when there has been a summary denial.  *Cullen v. Pinholster*, 563 U.S. 170, 187 (2011) (citation omitted).

"[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [Supreme Court's] decisions," as of the time of the relevant state-court decision. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000))). "Under the contrary to clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this [Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412–13 (internal quotation marks omitted). As to § 2254(d)(1), a federal court must confine its examination to evidence in the record. *Cullen*, 563 U.S. at 180–81.

Where a petitioner seeks habeas relief pursuant to § 2254(d)(2), on the basis of an erroneous factual determination of the state court, two provisions of the AEDPA apply. First, the AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Miller-El v. Dretke*, 545 U.S. 231, 240 (2005). Second, the AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Critically, § 2254(d)(2) only permits the examination of factual determinations underlying a federal claim, not those underlying a violation of state law. *E.g.*, *Wilson v. Corcoran*, 562 U.S. 1, 5–6 (2010); *Kim v. Garman*, No. 18-3380, 2020 WL 4228695, at *8 (E.D. Pa. Jan. 31, 2020).

In addition to the above requirements, a federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the court of the State." 28 U.S.C. § 2254(b)(1)(A). To do so, a petitioner must "fairly present all federal claims to the

highest state court before bringing them in a federal court." *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007). This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'" *Id.* (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)).

Even when a petitioner properly exhausts a claim, a federal court may not grant habeas relief if the state court's decision rests on a violation of a state procedural rule. *Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004). This procedural bar applies only when the state rule is "independent of the federal question [presented] and adequate to support the judgment." *Leyva*, 504 F.3d at 365–66 (citing *Nara v. Frank*, 488 F.3d 187, 196, 199 (3d Cir. 2007)). If a federal court determines that a claim has been defaulted, it may excuse the default only upon a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Id.* at 366 (citing *Lines v. Larkins*, 208 F.3d 153, 166 (3d Cir. 2000)).

To the extent that a petitioner's constitutional claims are unexhausted and/or procedurally defaulted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's] claims on the merits, we need not address exhaustion.").

### III.    DISCUSSION

#### A.  Sentencing Claims

The Court will first address Grounds One and Two, Petitioner's sentencing claims. Under Ground One, Petitioner contends that the trial court "failed to take into consideration the real time consequences of the No Early Release Act." (ECF No. 1-1, at 1.) Under Ground Two, Petitioner argues that the trial court "assumed aggravating factors that were not supported by the record." (*Id*. at 2.)

A federal court's ability to review state sentences is limited, however, to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies." *See Grecco v. O'Lone*, 661 F. Supp. 408, 415 (D.N.J. 1987) (citation omitted). Thus, federal courts may not review a challenge to a state court's discretion at sentencing unless it violates a separate federal constitutional limitation. *See Pringle v. Court of Common Pleas*, 744 F.2d 297, 300 (3d Cir.1984); *see also* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

"Absent colorable allegations that his sentence constitutes cruel and unusual punishment . . . or that it is arbitrary or otherwise in violation of due process, the legality and length of his sentence are questions of state law," over which this Court has no jurisdiction. *E.g.*, *Rabaia v. New Jersey*, No. 15-4809, 2019 WL 699954, at *12–13 (D.N.J. Feb. 20, 2019) (citing *Chapman v. United States*, 500 U.S. 453, 465 (1991)).

With those principles in mind, Grounds One and Two fail to allege or explain how the trial court violated Petitioner's federal rights.  Petitioner does not contend that his sentence constitutes cruel and unusual punishment, or that the trial court violated his due process rights.  Rather, the claims rely entirely on state law, (ECF No. 1-1, at 1–2), and the last reasoned state court decision on this matter only addressed issues of state law.  *Smith*, 2009 WL 47392, at *3–6.

A federal habeas court may not "reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 68.  Accordingly, as these claims relate only to alleged violations of state law, Petitioner is not entitled to habeas relief on these claims. *See McKinnon v. Lowery*, No. 13-7322, 2017 WL 6372236, at *6 (D.N.J. Dec. 13, 2017); *Amodio v. Warren*, No. 13-4355, 2017 WL 5998757, at *7–8 (D.N.J. Dec. 4, 2017).

**B. Procedurally Defaulted Claim**

Next, the Court will address Ground Seven, Petitioner's claim that he "was denied his right to a fair and impartial [trial], when the trial court had *ex parte* post-conviction communication with the jury." (ECF No. 1-1, at 15.)  Petitioner relies on the Supreme Court of New Jersey's decision in *Davis v. Husain*, 106 A.3d 438, 447 (N.J. 2014), in which that court forbade "*ex parte* post-verdict communications between a trial judge and jurors."  Respondent argues that this claim is procedurally defaulted, and that in any event, it lacks merit.  (ECF No. 7, at 20–22.)

"The procedural default doctrine is an important corollary to the exhaustion requirement, which requires state prisoners to exhaust available state remedies before presenting a claim to a federal habeas court." *See, e.g.*, *Fowlkes v. Att'y Gen. of New Jersey*, No. 21-7734, 2021 WL 4129489, at *2 (D.N.J. Sept. 10, 2021) (citing *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017)). Among other scenarios, the procedural default doctrine bars federal habeas claims when a prisoner fails to exhaust and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

This procedural bar applies only when the state rule is "independent of the federal question [presented] and adequate to support the judgment." *Leyva v. Williams*, 504 F.3d 357, 365–66 (3d Cir. 2007); *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999).  Federal courts may not excuse a procedural default and grant relief unless: (1) the petitioner establishes "cause" to excuse the default and actual "prejudice" as a result of the alleged violation of federal law; or (2) the prisoner demonstrates that failure to consider the claim will result in a fundamental "miscarriage of justice." *Leyva*, 504 F.3d at 366; *see also Coleman*, 501 U.S. at 750.

8

A court may, however, elect to *deny* a procedurally defaulted claim on the merits under 28 U.S.C. § 2254(b)(2). *Osorio v. Anderson*, No. 17-1536, 2020 WL 206000, at *4 (D.N.J. Jan. 14, 2020) (citing *Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005)).   In that scenario, if a claim did not receive an adjudication from the state courts on the merits, a federal habeas court must review the claim *de novo*. *See Thomas v. Horn*, 570 F.3d 105, 113 (3d Cir. 2009).

In this case, the PCR court held that Petitioner was procedurally barred from raising this claim under New Jersey Court Rule 3:22-4, because Petitioner could have, but failed, to raise it on direct appeal. (ECF No. 7-51, at 7.)  It is well settled that New Jersey Court Rule 3:22-4 provides an independent and adequate state ground to procedurally bar a petitioner's claims. *See Cabrera v. Barbo*, 175 F.3d 307, 314 (3d Cir. 1999).   As a result, Ground Seven of the Petition is procedurally defaulted.  The Petition does not assert cause and prejudice or that a fundamental miscarriage of justice occurred to excuse the default.   Moreover, although he had an opportunity to do so, Petitioner did not file a reply.  Consequently, the Court will dismiss Ground Seven as procedurally defaulted.

That said, the Court would alternatively deny this claim on the merits.  As mentioned above, Petitioner relies on the *Davis* case, in which the Supreme Court of New Jersey forbade trial judges from engaging in post-conviction, *ex-parte* conversations with jurors.  *Davis*, 106 A.3d at 447.  The court in *Davis* arrived at its conclusion based on the New Jersey Constitution, the State's code of judicial conduct, and the State's court rules. *Id*. at 447–48.

Unlike the State of New Jersey, there is no federal prohibition on post-conviction, *ex parte* communications with jurors, and the Supreme Court of the United States has not spoken on the issue.  Once again, "[c]laims based on errors of state law are not cognizable on federal habeas

review, and federal courts cannot re-examine state court determinations on state law issues." *See, e.g.*, *Pennington v. Hughes*, No. 13-2692, 2016 WL 4992092, at *4 (D.N.J. Sept. 19, 2016) (internal quotation marks omitted); *see also Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law." (internal quotation marks omitted)).   Accordingly, as this Court has no authority to review Petitioner's state law *Davis* claim, the Court will alternatively deny Ground Seven on the merits.

### C.  Juror Bias Claim

Under Ground Six, Petitioner contends that he was denied a fair trial because two of the jurors failed to disclose during *voir dire* their pre-trial knowledge of Petitioner and the crime. (ECF No. 1-1, at 13.)   The last reasoned state court decision with respect to this claim is the Appellate Division's opinion on PCR appeal, which affirmed for substantially the same reasons as set forth in the PCR court's opinion.   The PCR court stated, in relevant part:

> An accused is constitutionally guaranteed the right to trial by an impartial jury. *State v. Fortin*, 178 NJ. 540, 575 (2004); *State v. Tinnes*, 379 N.J. Super. 179, 183 (App. Div. 2005). "Jury selection is 'an integral part of the process to which every criminal defendant is entitled,' and necessarily requires 'a thorough voir dire' which presupposes that prospective jurors will provide complete and accurate responses during voir dire." *State v. Bianco*, 391 N.J. Super. 509, 517 (2007) (internal citations omitted). The standards that govern the conducting of jury selection were revamped by our Supreme Court wherein the importance of a meaningful voir dire was emphasized:
>
> > The purpose of jury selection is to obtain a jury that can decide the case without bias against any of the involved parties, that will evaluate the evidence with an open mind, and that will apply the law as instructed by the judge. Voir dire practices must be geared to eliciting meaningful information from prospective Jurors so those with a real potential for bias can be excused.
>
> *Standards for Jury Selection,* (promulgated by Directive# 21-06 on December 11, 2006) at pg 1.

Where the parties' ability to exercise preemptory challenges is infringed based on misinformation supplied to court by prospective jurors, then it may be said that there has been a deprivation of the parties right to a fair trial. *State v. Thompson*, 142 N.J. Super. 274, 282 (App. Div. 1976). However, the failure of voir dire to produce accurate information does not compel the granting of a new trial in all cases. *Bianco*, 391 N.J. Super. at 518. The Court has held that it is the juror's failure to disclose material that is "potentially prejudicial" to the defendant that is critical. *State v. Scher*, 278 NJ. Super. 249, 264 (App. Div. 1994).

The petitioner has alleged that two jurors, Tarice Brown and Keith Wescott, had pre-trial knowledge of the case due to personal relationships with friends and/or family of the petitioner. It is alleged that Tarice Brown was the supervisor of Tiana Toombs, the fiancé of the petitioner at the time of trial, at Harrah's Casino. It is further alleged Tarice Brown was a friend of Tamarra Trapp, the first cousin of co-defendant Ivy Moore. Lastly, it is alleged that Tarice Brown was a friend and co-worker of Raymond Calderon, a friend and co-worker of Ms. Toombs.

The petitioner states the juror Keith Wescott worked with the husband of the petitioner's aunt, Laura Smith, at the Atlantic City Medical Hospital, and it is alleged that Keith Wescott was friends with Laura Smith, her husband, and their daughter, Rahtiesha Smith.

Following oral argument, PCR counsel presented the Court with Investigation Reports from a private investigator to authenticate the petitioner's claim.    The private investigator interviewed and obtained statements from Tiana Toombs, Raymond Calderon, Laura Smith, and Rahtiesha Smith.  Tiana Toombs and Raymond Calderon corroborated the petitioner's assertion that juror Tarice Brown was the supervisor of Toombs and Calderon at Harrah's during 2003 and 2004; however, Ms. Brown was not employed at Harrah's at the time of the trial in 2006.  Ms. Toombs further proclaimed that she spoke in depth with Ms. Brown regarding the petitioner's case. Laura Smith and Rahtiesha Smith corroborated the Petitioner's assertion that juror Kieth Wescott did in fact work with Rahtiesha's father at the Atlantic City Medical Hospital.    Additionally, Rahtiesha told the investigator that she had spoke[n] with Mr. Wescott about the case prior to the commencement of trial, that Mr. Wescott had read news articles about the case, and that she overheard Mr. Wescott discussing the case with other people outside the courtroom.

11

After reviewing the petitioner's claim and the Investigation Reports, the Court holds that the petitioner has not established a prima facie case and is not entitled to an evidentiary hearing on the matter. The petitioner has failed to demonstrate how he was prejudiced by these relationships.

It is only claimed that these particular jurors were acquaintances with persons who knew the petitioner, not the petitioner himself or any individuals involved in the case, i.e., attorneys or witnesses. Ms. Toombs statement that she had discussed the case with juror Brown appears to be self-serving and does not specify any details of the conversations. Additionally, Ms. Toombs and Ms. Brown had only a professional relationship which ceased nearly two years prior to the commencement of trial.

Likewise, Rahtiesha Smith's allegations also have the appearance of being self-serving. She claims to have overheard Mr. Wescott discussing the trial with other people outside the courtroom, but does not provide any details as to what she overheard. Furthermore, her statement that Mr. Wescott expressed that he had read news about the case is in direct conflict with Mr. Wescott's response during voir dire questioning:

> THE COURT:        Sir, do you know any of the attorneys, witnesses or either defendant in this case?
>
> MR. WESCOTT:        No.
>
> THE COURT:        Have you heard or read anything about this case?
>
> MR. WESCOTT:        No.

. . . Moreover, Rahtiesha Smith indicated that Mr. Wescott was unaware she was in fact related to the petitioner.

The petitioner has not offered the Court any specific facts showing that either Ms. Brown or Mr. Wescott had any sort of bias against the petitioner nor has the petitioner shown precisely how their participation as jurors prejudiced him at trial. The Court cannot find that the petitioner was denied a fair trial by impartial jurors merely because two of the jurors were professional acquaintances with members of the petitioner's family.

(ECF No. 7-51, at 10–13.)  Here, the state court's decision was not an unreasonable application of clearly established federal law, and Ground Six does not specifically raise any federal constitutional issues.

To the extent Petitioner alleges that the two jurors were biased and violated his rights under the Sixth and Fourteenth Amendments, the Court disagrees.  The Sixth Amendment affords criminal defendants the right to a trial "by an impartial jury." *United States v. Mitchell*, 690 F.3d 137, 141 (3d Cir. 2012) (quoting U.S. Const. amend. VI).  "The right to an impartial jury is applicable to the States through the Fourteenth Amendment." *Royal v. Balicki*, No. 07-5234, 2009 WL 137335, at *10 (D.N.J. Jan. 20, 2009) (citing *Morgan v. Illinois*, 504 U.S. 719, 726 (1992)).

The Supreme Court case on this issue is *Smith v. Phillips*, 255 U.S. 209 (1982).  In that case, the Court explained that "the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Id.* at 215.  The Court also held that post-verdict hearings are sufficient for this purpose because "due process does not require a new trial every time a juror has been placed in a potentially compromising situation." *United States v. Mitchell*, 690 F.3d 137, 143 (3d Cir. 2012) (quoting *Smith*, 255 U.S. at 215).

In cases involving implied bias, the test is an objective one, and "focuses on whether an average person in the position of the juror in controversy would be prejudiced." *Id*. at 142  (internal quotation marks omitted).  Courts should "look to the facts underlying the alleged bias to determine if they would create in a juror an inherent risk of substantial emotional involvement." *Id*.  (citing *United States v. Russell*, 595 F.3d 633, 641–42 (6th Cir. 2010); *Solis v. Cockrell*, 342 F.3d 392, 399 (5th Cir. 2003)).  A juror's personal assessment of impartiality is "irrelevant for the purpose of the test." *Id*. (citing *United States v. Torres*, 128 F.3d 38, 43 (2d Cir.1997)).  "Because the right

to an impartial jury is constitutive of the right to a fair trial, courts must resolve any doubts regarding bias against the juror." *Id*. (internal quotation marks omitted).

In the present case, although the PCR court relied on state law in its decision, the record shows that the PCR court complied with the requirements of *Smith*.  In holding a PCR hearing, with oral argument, the PCR court provided Petitioner with an opportunity to present evidence of bias, actual or otherwise, and the court considered the relevant affidavits and investigative reports. (ECF No. 7-51, at 10–13.)

Based on the record, the PCR court's determination of the facts was reasonable.  The PCR court emphasized that Petitioner failed to offer "any specific facts showing that either Ms. Brown or Mr. Wescott had any sort of bias against the petitioner" and that he failed to articulate "precisely how their participation as jurors prejudiced him at trial." *Id*.  Consequently, the PCR court reasonably concluded that Petitioner failed to demonstrate that he "was denied a fair trial . . . merely because two of the jurors were professional acquaintances with members of . . . petitioner's family."  (*Id*. at 12–13.)

This Court must presume that that these factual determinations were correct and finds that Petitioner has failed to rebut that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Miller-El*, 545 U.S. at 240.  Indeed, Petitioner's arguments in Ground Six fail to explain how he was prejudiced or how he believes the two jurors were biased against him.

For all of those reasons, Petitioner has failed to show that the state court's decision was based on an unreasonable application of clearly established federal law or that its decision was based on an unreasonable determination of the facts.  Accordingly, Petitioner is not entitled to habeas relief under Ground Six.

**D. Jury Coercion Claim**

Turning then to Ground Three, Petitioner argues that "the trial court rushed the jury to render a verdict [with] the possibility of weekend deliberations." (ECF No. 1-1, at 5.)  The Court construes this argument as alleging that the trial judge engaged in jury coercion.  The last reasoned state court decision with respect to this claim is the Appellate Division's opinion on direct appeal:

> Defendant confines his appeal from the conviction to a single claim, which pertains only to the judge's response to the possibility of the jury being required to deliberate over the weekend, which is set forth in Point III.
>
> After eight days of testimony, the jury began deliberating at 9:00 a.m. on Wednesday, February 22, 2006. Shortly before 4:30 p.m., the jury sent a note to the judge that read, "for now we are hopelessly deadlocked." The words "for now" were crossed out. Upon receiving the note, the judge proposed to give the jury the instruction approved by the Court in *State v. Czachor*, 82 *N.J.* 392, 40506 n. 1, 413 A.2d 593 (1980). At the request of defendant, the judge also instructed the jury that in light of the "number of defendants, the number and nature, and the seriousness of the charges, against each defendant, it is not possible for [the court] to conclude that this jury has exhausted all possibility of reaching verdicts that these charges present." The judge then gave the proposed instruction, and defendant interposed no objection.
>
> The next day, February 23, was a Thursday. At 4:30 p.m., the jurors sent a note to the judge stating they were "finally making progress" and asking to retire for the weekend. The judge excused the jury for the day, but instructed them to return the next morning. Upon hearing that instruction, juror number fifteen spontaneously asked the judge whether the jurors would be required to deliberate over the weekend if they were unable to reach a verdict by the end of the next day, which was a Friday. The judge responded, "we will address that late tomorrow afternoon." Defense counsel, other than commenting that he had "a zillion appointments" over the weekend, did not make any objection to the judge's response to the juror's inquiry about the possibility of deliberating over the weekend. There was no further discussion of that subject by the judge or jury. In the early afternoon of the next day, Friday, February 24, the jury returned its verdict, convicting defendant and acquitting Hendricks.

In light of these events, defendant argues "the court rushed the jury to render a verdict and the possibility of weekend deliberations was coer[c]ive [.] Therefore, defendant should be granted a new trial." Defendant relies on *State v. Figueroa*, 190 *N.J.* 219, 24042, 919 A.2d 826 (2007), in support of his contention that the judge's non-committal remark concerning the possibility of weekend deliberations caused the jury to return a guilty verdict on Friday afternoon that it would not have otherwise rendered. Because defendant did not object to the judge's response to the juror's inquiry, we review this claim under the plain error standard. We will not reverse unless any such error was "clearly capable of producing an unjust result." *R.* 2:102.

We agree with the State's argument that *Figueroa* is distinguishable for two reasons. First, in *Figueroa,* the trial judge failed to remind the jurors that they should not "surrender their honest convictions" merely to return a verdict. 190 *N.J.* at 227, 919 A.2d 826. Second, in *Figueroa,* the judge actually informed the jurors that they would be required to deliberate over the weekend if they did not return a verdict before then. *Ibid.*

Moreover, after the inquiry from juror number fifteen on Thursday afternoon, the jury never communicated any further with the judge about weekend deliberations. To conclude on this record that the jury returned a guilty verdict for fear of being required to deliberate over the weekend would be to engage in unwarranted speculation. We decline to do so.

*Smith*, 2009 WL 47392, at *2–3.

Here, the state court's decision was not an unreasonable application of clearly established federal law and its decision was based on a reasonable determination of the facts. "The clearly established law relevant to . . . [jury coercion] is sparse." *Wong v. Smith*, 562 U.S. 1021 (2010) (Alito, J., Dissenting); *Camel v. Att'y Gen. of New Jersey*, No. 17-5298, 2020 WL 6042479, at *13 (D.N.J. Oct. 13, 2020). The only Supreme Court case that has addressed "the constitutional rule against coercive jury instructions" is *Lowenfield v. Phelps*, 484 U.S. 231 (1988). *Wong*, 562 U.S. at 1021. In *Lowenfield*, the Court held that coercive jury instructions are unconstitutional, and that

courts must judge coerciveness based on the totality of the circumstances. *Lowenfield*, 484 U.S. at 237–241.

With those principles in mind, it appears that the Appellate Division considered all of the relevant circumstances before concluding that the trial judge had not coerced the jury. *Smith*, 2009 WL 47392, at *2–3.  More specifically, the Appellate Division considered the contents and nature of the interaction at issue, in which "juror number fifteen spontaneously asked the judge whether the jurors would be required to deliberate over the weekend if they were unable to reach a verdict by the end of the next day, which was a Friday," to which the trial judge responded, "we will address that late tomorrow afternoon." *Id*. at *3.  The Appellate Division also considered: (1) the events before and after the interaction at issue; (2) the fact that the trial judge did not actually state that the jurors would be required to deliberate over the weekend if they did not return a verdict before then; (3) the otherwise proper jury instructions; and (4) the lack of objection from defense counsel.  *Id*. at *2–3.

For all of those reasons, Petitioner has failed to show that the state court's decision was based on an unreasonable application of clearly established federal law or that its decision was based on an unreasonable determination of the facts.  Accordingly, Petitioner is not entitled to habeas relief on Ground Three.

### E.  Ineffective Assistance of Counsel Claims

Next, Petitioner raises multiple claims of ineffective assistance of counsel.  The Sixth Amendment provides, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Cont. amend. VI.  The Supreme Court has recognized that "the right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14

(1970)).  To prevail on a claim of ineffective assistance of counsel, a petitioner must establish that: 1) counsel's performance was deficient, and 2) that the deficient performance prejudiced the petitioner. *See id.* at 687.

The first *Strickland* prong is an objective standard which requires the petitioner to show that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id*. at 687.  In evaluating whether counsel was deficient, "the proper standard for attorney performance is that of reasonably effective assistance." *Id*.  The Constitution requires a fair trial, not some higher quality of legal representation. *See id.* at 688–89.  Thus, the standard is highly deferential, and courts presume that counsel has "rendered adequate assistance" and to have used "reasonable professional judgment." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016).

The second prong of the *Strickland* test requires that a petitioner demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  The petitioner bears the burden of demonstrating how he was prejudiced.  Thus, where a petition contains "no factual matter . . . and only provides unadorned legal conclusion[s] . . . without supporting factual allegations, that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief." *Judge v. United States*, 119 F. Supp. 3d 270, 280–81 (D.N.J. 2015) (internal quotation marks omitted) (citations omitted).

A court need not address both components of the ineffective assistance inquiry. *Strickland*, 466 U.S. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice" courts should follow that course. *Id.*  Finally, even if a petitioner can establish

18

both prongs of *Strickland*, a habeas corpus petition fails unless the petitioner can demonstrate that the state court applied *Strickland* in an "objectively unreasonable manner." *See Woodford v. Viscotti*, 537 U.S. 19, 24–25 (2002); *see also* 28 U.S.C. § 2254(d)(1).

### 1. Ineffective Assistance of Counsel for Failing to Move for a Mistrial

First, under Ground Four, Petitioner contends that trial counsel was ineffective "because he failed to move for a mistrial after the jury indicated that it was 'hopelessly deadlocked.'" (ECF No. 1-1, at 8.)  Petitioner offers no further details.  The last reasoned state court decision with respect to this claim is the Appellate Division's opinion on PCR appeal, which affirmed for substantially the same reasons as set forth in the PCR court's opinion:

> "The decision to grant or deny a mistrial is entrusted to the sound discretion of the trial court, which should grant a mistrial only to prevent an obvious failure of justice." *State v. Harvey*, 151 N.J. 117, 205 (1997) (citing *State v. DiRienzo*, 53 N.J. 360, 383 (1969); *State v. Rechtschaffer*, 70 N.J. 395, 406 (1976)).  While it has been held that when the jury indicates it is deadlocked, the courts should inquire of the jury whether further deliberations will likely result in a verdict. *State v. Valenzuela*, 136 N.J. 458, 468-69 (1994), it is not always necessary to do so. *State v. Figueroa*, 190 N.J. 219, 240 (2007).  "When a jury communicates a deadlock, trial courts 'should be guided in the exercise of sound discretion by such factors as the length and complexity of trial and the quality and duration of the jury's deliberations.'" *State v. Ross*, 218 N.J. 130, 144 (2014) (quoting *State v. Czachor*, 82 N.J. 392, 407 (1980)).
>
> In the instant matter, trial concluded and the jury began deliberations on February 22, 2006.  At 4:24 p.m. that same day, the trial judge received a note from the jury that read, "For now we are hopelessly deadlocked," in which the words "For now" were scribbled through.  The trial judge recommended:
>
>> [G]iven that communication, I administer the further jury deliberation charge, send them home for the evening, and direct that they return tomorrow morning at nine o'clock, with the general indication that given the number of charges, the number of Defendants and the issues, in this lengthy record, that I am not able to find, at this point, and that they

have spent a reasonably sufficient time to conclude that they are beyond any hope of reaching verdicts. I'll hear you.

(17T: 14:1-8). At this point, all counselors agreed that it would be beneficial to have the jury return the next day to continue deliberations. The trial judge further reiterated his position:

> [W]hile there is no magic number, in terms of enough time spent, that a single day, less a half hour this morning, less an hour at lunch, less two other short breaks of ten to [fifteen] minutes a piece, is not sufficient time for any jury to thoroughly, properly consider the issues before it and reach a conclusion that it is hopelessly deadlocked.

(17T: 14:25-15:5). This Court is in agreement with the trial judge that due to the density of issues involved in the case, one day of deliberations was too brief a time for a jury to conclude it is "hopelessly deadlocked."

Taking into account how clearly the trial judge articulated his position that the jury had not had sufficient time to deliberate, it is highly likely a motion requesting a mistrial would have ultimately been unsuccessful. The Court cannot fault the trial attorney, much less call his performance deficient, for not requesting a mistrial. It seems quite apparent that the trial judge would have denied the request given the relatively brief time the jury had been deliberating. Considering the standard of appellate review on a trial judge's decision to deny a motion for mistrial, not preserving the issue for appeal was not ineffective assistance on behalf of trial counsel. See *State v. Labrutto*, 114 N.J. 187, 207 (1989) (an appellate court should not reverse a trial court's denial of a mistrial motion absent a clear showing that the defendant suffered actual harm or that the court otherwise abused its discretion.)

(ECF No. 7-51, at 15–16 (alterations in original).) Here, Petitioner has not shown that the state court unreasonably applied either of the *Strickland* prongs. Once again, the Petition offers no further elaboration on this point, and Petitioner did not file a reply.

The Appellate Division reasonably applied the first prong of *Strickland*, by concluding that trial counsel's performance was not deficient. The court considered the trial judge's representations that he believed that "one day of deliberations was too brief a time for a jury to

conclude it [was] 'hopelessly deadlocked,'" given the number of defendants, the length of the record, the number of charges, and general complexity of the case.  (ECF No. 7-51, at 15–16.)

After comparing those express findings with the standard for granting a mistrial, *i.e.*, the length and complexity of trial, the quality and duration of the jury's deliberations, and whether further deliberations would likely result in a verdict, the Appellate Division reasonably held that it was "highly likely," that "requesting a mistrial would have ultimately been unsuccessful." (*Id.* at 16).  In turn, the Appellate Division properly applied *Strickland*, when it held that counsel was not deficient for failing to bring a meritless motion. *See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) ("[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim.") (citation omitted).

Additionally, even if counsel's actions fell below an objective standard of reasonableness, Petitioner has not demonstrated *Strickland* prejudice.  Although the Appellate Division did not make an express finding on prejudice, the court did conclude that "[i]t seems quite apparent that the trial judge would have denied the request [for a mistrial] given the relatively brief time the jury had been deliberating." (ECF No. 7-51, at 16.)  As a result, even if counsel were deficient in failing to file a motion for a mistrial, Petitioner would not have suffered prejudice, because the trial judge would have denied the motion.   Accordingly, Petitioner fails to show that the Appellate Division unreasonably applied either prong of *Strickland*; and he is not entitled to habeas relief on Ground Four.

### 2.   Ineffective Assistance of Counsel for Failing to Move to Dismiss the Indictment

Next, under Ground Five (A), Petitioner contends that due to a defect before the grand jury, trial counsel was ineffective for failing to move for dismissal of the indictment.   Petitioner maintains that the State's sole witness before the grand jury, Sergeant David Santiago, "tainted"

the proceedings. (ECF No. 1-1, at 9–10.) According to Petitioner, Sergeant Santiago mischaracterized his interview with Yaraima Garabato, an employee of the bar. (*Id*.) Petitioner contends that Ms. Garabato never stated that two people announced their intent to rob the bar, but Sergeant Santiago had said the opposite. (*Id*.) Petitioner offers no further elaboration and did not provide a copy of, or citation for, the interview at issue. (*Id*.) The PCR court and the Appellate Division on PCR appeal summarily denied this claim. (ECF No. 7-51, at 17); *Smith*, 2017 WL 5494622, at *2. Nevertheless, AEDPA deference applies even where there has been a summary denial. *Cullen*, 563 U.S. at 187.

Under our jurisprudence, because there is no federal right to a state criminal grand jury process, defects in a grand jury proceeding that result in an indictment are not generally challengeable in habeas cases absent some other basis for finding a constitutional violation. *E.g.*, *Wainwright v. Goode*, 464 U.S. 78, 86 (1983); *Yough v. Lord*, No. 19-601, 2020 WL 6689854, at *9 (D.N.J. Nov. 13, 2020); *Potter v. Att'y Gen. of New Jersey*, No. 15-8784, 2018 WL 3201799, at *7 (D.N.J. June 29, 2018). Further, under most circumstances, "a subsequent guilty verdict from a petit jury" will render harmless any alleged defect before the grand jury. *Yough*, 2020 WL 6689854, at *9; *see also United States v. Merchanik*, 475 U.S. 66, 72–73 (1986); *United States v. Console*, 13 F.3d 641, 672 (3d Cir. 1993) (finding that with the exception of a claim of racial discrimination in the selection of grand jurors, a "petit jury's guilty verdict render[s] any prosecutorial misconduct before the indicting grand jury harmless").

In the present case, assuming *arguendo* that Sergeant Santiago had presented false or misleading testimony to the grand jury, the petit jury's guilty verdict "cured any defect in the grand jury proceeding and rendered any misconduct harmless." *United States v. Solomon*, No. 05-0385, 2013 WL 869648, at *7 (W.D. Pa. Mar. 7, 2013) (quoting *United States v. Muhammad*,

336 F. App'x 188, 193 (3d Cir. 2009)).  As the Supreme Court explained in *Merchanik*, even if prosecutorial misconduct affected the grand jury's decision to indict a defendant:

> the petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.

*Merchanik*, 475 U.S. at 70.

In the present case, the evidence produced at trial and the petit jury's verdict, cured any alleged defect stemming from Sergeant Santiago's grand jury testimony. *See Potter*, 2018 WL 3201799, at *7 (quoting *Lafler v. Cooper*, 566 U.S. 156, 165 (2012)) ("To determine whether 'an otherwise fair trial remedies errors not occurring at the trial itself . . . . [courts must inquire] whether the trial cured the particular error at issue.'").  In particular, the record shows that Ms. Garabato testified at trial, and was cross-examined. (ECF No. 7-9, at 102–21.)  "Thus, any potential errors related to [Sergeant Santiago's] hearsay testimony during the grand jury proceeding were cured at the subsequent trial, which resulted in a guilty verdict." *Potter*, 2018 WL 3201799, at *7.

Returning then to the *Strickland* analysis, even assuming that counsel was deficient for failing to challenge the indictment, Petitioner cannot demonstrate that he suffered prejudice.  In other words, because the petit jury's verdict rendered the alleged grand jury error harmless, Petitioner cannot show that he suffered prejudice under *Strickland*.  As a result, the state court could have summarily denied this claim after reasonably concluding that Petitioner failed to establish *Strickland* prejudice.

For those reasons, Petitioner has failed to show that the state court's decision was based on an unreasonable application of clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief on Ground Five (A).

### 3.   Ineffective Assistance of Counsel for Failing to Move for Acquittal of Counts II and III

Next, as to Ground Five (B), Petitioner contends that trial counsel was ineffective for failing to move for acquittal of Counts II and III. (ECF No. 1-1, at 11.)  With regard to those Counts, Petitioner argues that the State failed to present evidence that he committed or attempted to commit robbery, *i.e.*, that the State failed to prove that he "exercised unlawful control over money." (*Id*. at 12.)  The PCR court and the Appellate Division on PCR appeal summarily denied this claim. (ECF No. 7-51, at 17); *Smith*, 2017 WL 5494622, at \*2.  Once again, AEDPA deference applies even where there has been a summary denial.  *Cullen*, 563 U.S. at 187.

The clearly established federal law on this point is *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  In *Jackson*, the Supreme Court held that when considering a sufficiency of the evidence claim, "the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Sullivan v. Cuyler*, 723 F.2d 1077, 1083–84 (3d Cir. 1983) (citing *Jackson*, 443 U.S. at 319)).  The same standard applies to post-verdict motions for judgment of acquittal. *see United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005).

In New Jersey, in addition to the element of force, robbery requires that a defendant use force "in the course of committing a theft," which includes "an attempt to commit theft." N.J. Stat. § 2C:15-1(a).  The statute defines theft as when a person "unlawfully takes, or exercises unlawful control over, movable property of another with purpose to deprive him thereof." N.J. Stat. § 2C:20-3(a).

In support of his argument, Petitioner highlights that no money was missing from the register, which had remained unopened.[2] (ECF No. 1-1, at 11–12.) Petitioner also alleges, in his words, that Ms. Garabato admitted that Petitioner and Mr. Sayers "never made any remarks concerning their intent to rob the Maritime Tavern." (*Id.*) Additionally, Petitioner takes issue with the testimony of John Allen, a patron of the bar, who had testified that Petitioner announced his intent to commit a robbery upon entering the bar. Petitioner emphasizes that Mr. Allen had not mentioned the announcement at his initial interview with the police. (*Id.* at 12.)

Under *Jackson*, however, in the *light most favorable to the prosecution*, the jury could have simply believed Mr. Allen's testimony at trial that when Petitioner and Mr. Sayers entered the bar, Petitioner announced, "This is a fucking holdup. Put your fucking money on the bar." (ECF No. 7-10, at 35:5–6.) Petitioner emphasizes that Mr. Allen did not mention that announcement in his initial statement to the police. On cross-examination, however, Mr. Allen testified that there was "[n]o particular reason," he left the announcement out, but repeated the two sentences verbatim, and added that those were Petitioner's "exact words." (ECF No. 7-10, at 73:21 to 75:12.)

Mr. Allen testified, after all, that he was in the middle of the crossfire, and was conversating with the bartender, who had returned fire at Petitioner. (ECF No. 7-10, at 32:24 to 39:22.) From that vantage point, Mr. Allen was able to recount the shooting with remarkable detail. (*Id.*) In contrast, Ms. Garabato testified that she was cleaning approximately sixteen feet away from Petitioner, and a customer had pulled her down. (ECF No. 7-9, at 119:12 to 121:9.) Nor was Ms. Garabato's testimony necessarily in conflict, as she stated on cross-examination that she could not remember Petitioner or Mr. Sayers saying anything at all. (*Id.* at 116:1–13.) A rational trier of fact

---

[2] It is likely that the register remained unopened because rather than comply with Petitioner's request to surrender the money, the bartender drew his firearm, and exchanged gunfire with Petitioner. *Smith*, 2009 WL 47392, at *1.

could have found Mr. Allen to be a credible witness and believed his version of the events over any other.

As a result, under *Jackson*, assuming that the jury believed Mr. Allen, his testimony was sufficient to establish beyond a reasonable doubt that Petitioner exercised or attempted to exercise unlawful control over money.  Consequently, had trial counsel filed a motion for judgment of acquittal based on the sufficiency of the evidence on Counts II and III, counsel would not have been successful.

In summarily denying this claim, the state court could have reasonably concluded that counsel was not deficient for failing to bring a meritless motion. *See Werts*, 228 F.3d at 178. Similarly, even if counsel were somehow deficient, the state court could have reasonably held that Petitioner would not have suffered prejudice because the trial judge would have denied the motion. As a result, the state court could have reasonably denied Petitioner's claim under either *Strickland* prong, or both.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

### F.  Ineffective Assistance of Appellate Counsel

Finally, under Ground Eight, Petitioner contends, with no further elaboration, that his appellate counsel was ineffective "due to her substandard performance." (ECF No. 1-1, at 16.)  "A criminal defendant has a right to the effective assistance of appellate counsel on the first appeal as of right." *United States v. Scripps*, 961 F.3d 626, 632 (3d Cir. 2020).  To assess the performance of appellate counsel, courts apply the same two-prong test set forth in *Strickland*. *Id*.

As an initial matter, the Court finds that this Ground fails to comply with Habeas Rule 2(c). Pursuant to that Rule, a § 2254 petition must "specify all the grounds for relief available to the petitioner [and] state the facts supporting each ground."  Petitions which provide no more than "vague and conclusory grounds for habeas relief are subject to summary dismissal" under the

rule. *Anderson v. Pennsylvania Attorney General*, 82 F. App'x 745, 749 (3d Cir. 2003); *see also United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000); *United States v. Dawson*, 857 F.2d 923, 928 (3d Cir. 1988).  Here, Petitioner fails to explain how he believes appellate counsel was deficient or how those deficiencies prejudiced Petitioner.  Consequently, the Court will summarily deny Ground Eight as vague and conclusory under Habeas Rule 2.

That said, even if the Court were to incorporate Petitioner's arguments on this issue from his *pro se* PCR brief, (ECF No. 7-42, at 25–27), the Court would alternatively deny the claim on the merits.  The last reasoned state court decision with respect to this claim is the Appellate Division's opinion on PCR appeal, which affirmed for substantially the same reasons as set forth in the PCR court's opinion:

> [I]t is argued that appellate counsel failed to provide effective assistance of counsel by failing to raise the following issues on direct appeal: the trial court's failure to charge the jury on the lesser included offense of attempted robbery; the trial court's refusal to permit introduction of the full transcript of the 911 call; prosecutorial misconduct; issues pertaining to the jury instructions; and, issue that the conspiracy lacked any over[t] act. These issues are raised in the brief but are unsupported by argument or proof. However, it is claimed, although not certified to, that the petitioner raised these issues to his appellate counsel who declined to address them. Due to the close nature of the jury's decision, as evinced by the jury's initial deadlock, the petitioner claims that he would be able to show prejudice.
>
> The petitioner categorically lists all the alleged deficiencies without setting forth any supporting argument. For example, the petitioner does not set forth why the lesser included offense of attempted robbery should have been charged or how the jury instruction were insufficient. Without an argument in support thereof, these proposed deficiencies in counsel's performance are nothing more than bald assertions and do not amount to a *prima facie* case in accordance with *Strickland*.
>
> To conclude his brief in support of the petitioner's petition, PCR counsel submits what are labeled "Additional Issues" for the Court's

consideration. Similarly, these additional issues are unsupported by
an argument and are found to be entirely without merit.

(ECF No. 7-51, at 15–16.)

Here, the Appellate Division's denial of this claim was not an unreasonable application of

*Strickland*.  The Appellate Division emphasized that Petitioner listed the ways he believed that

counsel was deficient but failed to provide any arguments or proof to establish those deficiencies.

In turn, the Appellate Division reasonably applied *Strickland*, when it held that Petitioner's bald

assertions were insufficient to establish a *prima facie* case of ineffective assistance of appellate

counsel.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

### G.  Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of

appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. §

2254.  A certificate of appealability may issue "only if the applicant has made a substantial

showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies

this standard by demonstrating that jurists of reason could disagree with the district court's

resolution of his constitutional claims or that jurists could conclude the issues presented are

adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327

(2003).

"When [a] district court denies a habeas petition on procedural grounds without reaching

the prisoner's underlying constitutional claim," a certificate of appealability "should issue when

the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states

a valid claim of the denial of a constitutional right and . . . whether the district court was correct in

its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Applying those standards

here, this Court finds that a certificate of appealability shall not issue.

28

### IV.     CONCLUSION

For the foregoing reasons, the Court will dismiss Ground Seven as procedurally defaulted, alternatively deny Ground Seven on the merits, deny the remainder of the Petition, and will not issue a certificate of appealability.  An appropriate Order follows.


DATED: May 2, 2022

/s/ Robert B. Kugler_____
ROBERT B. KUGLER
United States District Judge